Filed 2/15/19; Modified and Certified for Pub. 3/7/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SID LANDAU,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | G056050<br><br>(Super. Ct. No. M9094-1)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Richard M. King, Judge.  Petition denied.

Sharon Petrosino, Public Defender, and Miles David Jessup, Deputy Public Defender, for Petitioner.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Meredith S. White and Minh U. Le, Deputy Attorneys General, for Real Party in Interest.

No appearance for Respondent.

\*          \*          \*

In 2009, a jury found petitioner Sid Landau to be a sexually violent predator (SVP) within the meaning of the Sexually Violent Predator Act (SVPA). (Welf. & Inst. Code, § 6600 et seq.)[1] The trial court subsequently committed Landau to the custody of the State Department of State Hospitals (SDSH) for an indeterminate term. We have filed three prior opinions regarding these matters. Landau has filed a petition for unconditional discharge or conditional release (outpatient treatment), which is currently set for an evidentiary hearing in the trial court (essentially a retrial).

Effective January 1, 2016, the Legislature amended the SVPA as follows: "Notwithstanding any other law, the evaluator performing an updated . . . evaluation shall include with the evaluation a statement listing all records reviewed by the evaluator . . . . The court shall issue a subpoena, upon the request of either party, for a certified copy of these records. The records shall be provided to the attorney petitioning for commitment and the counsel for the person subject to this article. The attorneys may use the records in proceedings under this article and shall not disclose them for any other purpose." (§ 6603, subd. (j)(1).)[2]

Here, in advance of the retrial, the Orange County District Attorney served a subpoena duces tecum (SDT) on Coalinga State Hospital to obtain Landau's records. The SDSH complied with the SDT and forwarded Landau's records to the trial court. Landau moved to quash the subpoena; the court denied the motion. Landau has now filed a petition for a writ of mandate in this court in order to challenge the lower court's ruling.

We find that section 6603 (j) explicitly authorizes a district attorney to subpoena and use an SVP's medical records in proceedings under the SVPA. Thus, we deny Landau's petition for a writ of mandate.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] Hereinafter referred to without the word "subdivision" and the No. "(1)."

I

FACTS AND PROCEDURAL BACKGROUND

In 1982, Landau was convicted of two counts of orally copulating a child and was sentenced to six years in prison. In 1988, Landau was convicted of 18 counts of committing a lewd act on a child and was sentenced to 17 years in prison. Prior to his release date, the prosecution filed an SVP petition. In 2009, a jury found that Landau met the criteria under the SVPA and the court ordered an indefinite commitment. We affirmed the judgment. (*People v. Landau* (2013) 214 Cal.App.4th 1, 8.)[3]

In August 2010, Landau filed a petition for discharge or conditional release. The trial court summarily denied the petition. We reversed and remanded the matter. (*People v. Landau* (2011) 199 Cal.App.4th 31, 35.) On remand, a jury found that Landau continued to meet the criteria for a SVPA commitment; however, due to the admission of prejudicial hearsay evidence, we again reversed and remanded the matter. (*People v. Landau* (2016) 246 Cal.App.4th 850.)

*The Instant Proceedings*

On December 14, 2017, the district attorney served an SDT on the custodian of records at Coalinga State Hospital. The SDT sought Landau's treatment plans, test results, and other records relied on by two SDSH doctors "in forming their expert opinions as stated in their evaluations." Landau filed a motion to quash the subpoena; the district attorney filed an opposition, relying in part on section 6603 (j).[4]

On February 16, 2018, the trial court conducted a hearing on the motion to quash the subpoena. The court told the parties that: "The hospital has delivered the documents to the court." After hearing argument from both sides the court denied the

[3] The filing date was delayed due to issues unrelated to this writ proceeding.

[4] We reject Landau's argument that the People's reliance on section 6603 (j) is waived.

3

motion, but "stayed the dissemination of records" in order "to allow [Landau] to file a writ."

On March 6, 2018, Landau filed a petition for writ of mandate in this court, which we summarily denied.

On June 27, 2018, the California Supreme Court granted review and returned the matter to this court. We complied with the Supreme Court's directions by vacating our previous order and issuing an order to show cause.[5]

II

DISCUSSION

Landau argues that the trial court "erred when it refused to quash" the district attorney's subpoena, which sought his "confidential mental health and other medical records" from the SDSH for use at the retrial. We disagree for reasons we shall explain, but we will start with a brief overview of the SVPA.

Generally, the SVPA provides for indefinite civil commitments of persons who are found beyond a reasonable doubt to be an SVP. An SVP is a person convicted of a sexually violent offense against one or more victims, and who has been diagnosed with a mental disorder that renders them a danger to public safety because they are likely to reoffend and commit additional sexually violent acts. (§§ 6600, subd. (a)(1), 6603, subd. (d), 6604.) At the commitment hearing, the alleged SVP has the right to a trial by jury, the assistance of counsel, the right to retain experts, and "access to all relevant medical and psychological records and reports." (§ 6603, subd. (a).)

---

[5] After oral argument, the California Supreme Court filed its opinion in *People v. Superior Court* (*Smith*) (2018) 6 Cal.5th 457, which presented issues similar to those in this case. The Supreme Court generally held that the SVPA allows a court to provide a defendant's mental health records to a district attorney, and the district attorney is not barred from sharing those records with a retained expert. (*Id*. at pp. 465-469.)

4

Once a person has been found to be an SVP, the SDSH must conduct annual mental health examinations. The SDSH must report to the court whether the person currently meets the definition of an SVP, and whether unconditional discharge or conditional release (to a less restrictive alternative that would adequately protect the community) is in the person's best interest. (§ 6604.9.) If the SDSH director does not recommend release, the SVP may nonetheless petition for release. The SVP must make a showing that they would not be a danger to others while under supervision and treatment in the community. (§ 6608, subd. (g).)

An SVP is entitled to an evidentiary hearing if the petition is not frivolous. The trial "court shall endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds and, if so, shall deny the petition without a hearing." (§ 6608, subd. (a).) If the court finds probable cause to believe the petition has merit, it must set a hearing date. (§ 6605, subd. (a)(2).) At that evidentiary hearing, the SVP is entitled to all of the constitutional protections provided for at the initial commitment hearing (e.g., trial by jury). The state has the burden to prove beyond a reasonable doubt that the committed person remains an SVP. (§ 6605, subd. (a)(3).)

A. *Section 6603 (j) allows both parties to subpoena otherwise confidential records.*

SVPA matters are special proceedings of a civil nature. (*Moore v. Superior Court* (2010) 50 Cal.4th 802, 815.) Discovery procedures in SVPA proceedings are governed by the Code of Civil Procedure. (*People v. Superior Court* (*Cheek*) (2001) 94 Cal.App.4th 980, 989.) All civil litigants generally have the right to subpoena relevant documents as part of discovery proceedings. (See Code Civ. Proc., §§ 1985-1985.8.)

We generally review discovery orders for an abuse of discretion. (*People Ex Rel. Harris v. Sarpas* (2014) 225 Cal.App.4th 1539, 1552.) However, statutory interpretation is a question of law, which we review de novo. (*John v. Superior Court* (2016) 63 Cal.4th 91, 95-96.) Our task is to ascertain the intent of the Legislature.

5

(*People v. Jefferson* (1999) 21 Cal.4th 86, 94.)  Generally, we first look at the words of the statute applying their "'usual and ordinary meanings.'"  (*People v. Lawrence* (2000) 24 Cal.4th 219, 230-231.)  If the meaning of the words is unambiguous, then the plain meaning of the language governs.  (*People v. Coronado* (1995) 12 Cal.4th 145, 151.)

An SVP has a right to privacy in his SDSH records, but that right is not absolute.  (§ 5328; *People v. Martinez* (2001) 88 Cal.App.4th 465, 478-479.)  An SVP's right to privacy is balanced against the state's interest in protecting the public.  (*People v. Allen* (2008) 44 Cal.4th 843, 866.)  Further, the justice system has an interest in providing evidence to assist the trier of fact in determining whether an SVP continues to meet the requirements under the SVPA.  (*People v. Leonard* (2000) 78 Cal.App.4th 776, 792-793.)

In 2001, the Supreme Court interpreted the relevant statutes and held that "in an SVPA proceeding . . . the district attorney may obtain access to otherwise confidential treatment information concerning an alleged SVP to the extent such information is contained in an updated evaluation."  (*Albertson v. Superior Court* (2001) 25 Cal.4th 796, 807.)  And again, as we stated in the introduction, the Legislature amended the SVPA, effective January 1, 2016:  "Notwithstanding any other law, the evaluator performing an updated [SVP] evaluation shall include with the evaluation a statement listing all records reviewed by the evaluator pursuant to subdivision (c) [updated and replacement evaluations].  The court shall issue a subpoena, upon the request of either party, for a certified copy of these records.  The records shall be provided to the attorney petitioning for commitment and the counsel for the person subject to this article.  The attorneys may use the records in proceedings under this article and shall not disclose them for any other purpose."  (§ 6603 (j).)

In this case, as one of the two parties in the civil litigation, the district attorney is authorized to subpoena relevant records under the Code of Civil Procedure. Further, the recently amended statute—section 6603 (j)—gives the district attorney the explicit authority to subpoena Landau's otherwise confidential medical records, which

6

formed the basis of the SVP evaluations. Moreover, section 6603 (j) also gives the district attorney the limited ability to use those subpoenaed records at SVPA proceedings. The Legislature's language and intent is clear and unambiguous. There is no indication that the district attorney intends to use Landau's subpoenaed medical records for unauthorized purposes. Therefore, the trial court did not abuse its discretion when it denied Landau's motion to quash the district attorney's subpoena.

Landau argues that section 6603 (j) applies strictly to an "updated" SVP evaluation done under section 6603 (the state's petition for an original commitment), rather than under section 6605 (an SVP's petition for an unconditional discharge), or section 6608 (an SVP's petition for a conditional release). We disagree.

When construing statutes, we consider the language of the entire statutory scheme "'so as to harmonize its various elements without doing violence to its language or spirit.'" (*People v. Garcia* (1999) 21 Cal.4th 1, 6.) This rule of statutory construction is known as the harmonious-reading canon. (See Scalia & Garner, Reading Law: The Interpretation of Legal Texts (2012) pp. 180-182 ["there can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously"].)

The SVPA encompasses 24 statutes within the Welfare and Institutions Code, Division Six, Part Two, Chapter Two, Article Four. (§§ 6660-6609.3.) The first statute under the SVPA defines certain terms; the statute does not define the term "updated." (§ 6600.) Under the statute describing the procedures for the initial SVPA commitment hearing, "[i]f the attorney petitioning for commitment *under this article* determines that *updated* evaluations are necessary to properly present the case for commitment, the attorney may request the [SDSH] to perform *updated* evaluations. (§ 6603, subd. (c)(1), italics added.) Under the statute describing the procedures for a petition for unconditional discharge, "[t]he attorney designated by the county . . . shall have the right to demand a jury trial and to have the committed person evaluated by experts chosen by the state." (§ 6605, subd. (a)(3).) And under the statute describing the

7

procedures for a petition for conditional release, "[t]he attorney designated [by the county of domicile] shall represent the state and may have the committed person evaluated by experts chosen by the state." (§ 6608, subd. (g).)

Again, section 6603 (j) provides: "Notwithstanding any other law, the evaluator performing an *updated* evaluation shall include with the evaluation *a statement listing all records reviewed by the evaluator pursuant to subdivision (c)*." (Italics added.) Subdivision (c) specifies these records: "available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated, either voluntarily or by court order." (§ 6603, subd. (c)(1).) Section 6603 (j) then goes on to provide: "The court shall issue a subpoena, upon the request of either party, for a certified copy of these records. The records shall be provided to the attorney petitioning for commitment and the counsel for the person *subject to this article*. The attorneys may use the records in proceedings *under this article* and shall not disclose them for any other purpose." (Italics added.)

We find that by using the phrase "under this article," the Legislature intended that when various "updated" SVP evaluations occur, the underlying SDSH records can be subpoenaed (by both parties) for any applicable evidentiary hearings or trials. This interpretation is based on the plain meaning of section 6603 (j), and makes reasonable sense under the SVPA. Regardless of the particular type of evidentiary hearing, the prosecution needs access to an SVP's medical records in order to meet their burden before the trier of fact. Similarly, the attorney for the respondent (the SVP or alleged SVP) also needs access to these same records.

In short, in order to harmonize the intent of the Legislature across the entire SVPA ("under this article"), we find that section 6603 (j) applies to evidentiary hearings under section 6603 (original commitments), section 6605 (petitions for unconditional discharge), and section 6608 (petitions for conditional release).

8

*B. Section 6603 (j) is not being applied retroactively.*

Landau argues that section 6603 (j), is improperly being applied retroactively, arguing that "the newly added . . . subdivision (j), applies only to records reviewed by a DSH evaluator . . . , and in conjunction with an updated evaluation issued on or after January 1, 2016." We disagree.

Generally, all laws are to be applied prospectively. (*In re Estrada* (1965) 63 Cal.2d 740, 746.) Nonetheless, "a law addressing the conduct of trials still addresses conduct in the future. This is a principle that courts in this state have consistently recognized. Such a statute 'is not made retroactive merely because it draws upon facts existing prior to its enactment.'" (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 288.) Rather, the effect of such statutes "'is actually prospective in nature since they relate to the procedure to be followed in the future.' [Citations.]" (*Ibid*.)

Section 6603 (j) clarifies discovery procedures in order to obtain a person's previously existing SDSH medical records (through the use of SDTs), and their subsequent disclosure for purposes of SVP proceedings. The statute plainly applies to any SVPA proceedings that were to occur after January 1, 2016.

Here, the district attorney's SDT, the release of Landau's SDSH records to the parties, and the retrial on Landau's petition for release will all have occurred after January 1, 2016. Thus, section 6603 (j) is being applied prospectively, not retroactively.

Landau also argues that section 6603 (j) "cannot invade records that predated the law and were confidential when generated, without involuntariness issues." (Original boldfacing omitted.) But Landau's concern regarding "voluntariness" is an evidentiary determination of a preliminary fact. (See Evid. Code, §§ 402, 405 [determination of foundational and other preliminary facts]; see also *People v. Smith* (2007) 40 Cal.4th 483, 501 ["Whether a statement is voluntary depends upon the totality of the circumstances surrounding the interrogation"].)

9

In this case, Landau's retrial has not taken place and the trial court has made no evidentiary rulings. Thus, issues regarding "voluntariness" and admissibility are premature and are not ripe for review in this writ proceeding.

*C. Section 6603 (j) does not violate the federal or state equal protection clauses.*

Landau argues that section 6603 (j) violates his constitutional right to equal protection under the law. He argues that "the Legislature has denied only SVPs the right to keep their treatment records confidential from prosecutors. The Legislature did not deny similarly situated MDOs [(mentally disordered offenders)] and MDSOs [(mentally disordered sexual offenders)] the right to keep their treatment records confidential from prosecutors." We disagree. [6]

When analyzing equal protection claims: "We first ask whether the two classes are similarly situated with respect to the purpose of the law in question, but are treated differently." (*People v. Lynch* (2012) 209 Cal.App.4th 353, 358.) MDOs and SVPs have been found to be similarly situated in other contexts. (See *People v. McKee* (2010) 47 Cal.4th 1172, 1203 (*McKee I*); see also *In re Calhoun* (2004) 121 Cal.App.4th 1315, 1351-1352 ["Both have been convicted of a serious or violent felony. At the end of their prison terms, both have been civilly committed to the Department of Mental Health for treatment of their disorders. Furthermore, the purpose of the MDO Act and the SVPA is the same: to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders"].)

In an equal protection review, if the groups are sufficiently similar with respect to the law being challenged, we then ask whether disparate treatment of the

[6] The California Supreme Court declined to address a similar equal protection argument. (*People v. Superior Court* (*Smith*), *supra*, 6 Cal.5th at p. 468 ["Whether the particular dangers posed by SVPs relative to those posed by MDOs or MDSOs warrant differential treatment is not an issue we need to address here"].) But read nothing within the opinion that would forestall our consideration of Landau's equal protection argument.

10

groups is justified. (*McKee I*, *supra*, 47 Cal.4th at p. 1207.) "Unless the law treats similarly situated persons differently on the basis of race, gender, or some other criteria calling for heightened scrutiny, we review the legislation to determine whether the legislative classification bears a rational relationship to a legitimate state purpose." (*People v. Moreno* (2014) 231 Cal.App.4th 934, 939.) "However, a law that interferes with a fundamental constitutional right or involves a suspect classification, such as race or national origin, is subject to strict scrutiny requiring a compelling state interest." (*People v. Lynch*, *supra*, 209 Cal.App.4th at p. 358.)

The Supreme Court has identified two types of interests protected by the right to privacy: 1) the right to autonomous decision making, and 2) the right to nondisclosure of intimate personal information (confidentiality). (*Whalen v. Roe* (1977) 429 U.S. 589, 599-600.) The interest in autonomy is recognized as a fundamental right and is thus accorded the utmost constitutional protection; this right involves issues related to marriage, procreation, family relationships, child rearing and education. (*Id.* at p. 600, fn. 26.) However, confidentiality has not been recognized as a fundamental right. (See *People v. Gonzales* (2013) 56 Cal.4th 353, 385 [disclosing therapy records in SVPA commitment proceedings does not violate a fundamental constitutional right].)

Here, Landau's equal protection challenge is to section 6603 (j), which concerns access (by both parties) to a person's otherwise confidential SDSH medical records. To start our analysis, we find that SVPs are similarly situated to MDOs and MDSOs for the purposes of analyzing access to medical records. (See *McKee I*, *supra*, 47 Cal.4th 1172.) Further, under section 6603 (j), the People have an arguably greater level of access to the medical records of SVPs as compared to MDOs and MDSOs.

We now turn to the justification for the disparate treatment of these similarly situated groups. Again, all persons who are civilly committed do *not* have a fundamental right to the privacy of their medical records. (See *People v. Gonzales*,

11

*supra*, 56 Cal.4th at p. 385.)  Therefore, we must evaluate Landau's equal protection challenge under a rational basis test.

Under rational basis review, legislation is presumptively valid and is upheld so long as there exists a rational relationship between the disparity of treatment and some legitimate governmental purpose.  (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 16.)  Under this test, the burden is on the party challenging the legislation to demonstrate the absence of any rational connection to a legitimate state interest.  (*Id.* at p. 17.)  Indeed, "'a court may engage in "'rational speculation'" as to the justifications for the legislative choice [citation].  It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record.'"  [Citation.]  To mount a successful rational basis challenge, a party must '"negative every conceivable basis'" that might support the disputed statutory disparity.  [Citations.]  If a plausible basis exists for the disparity, courts may not second-guess its '"wisdom, fairness, or logic.'" [Citations.]"  (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.)

Here, the SVPA provides for an indeterminate commitment term, while the MDO and MDSO statutory schemes provide for limited commitments, which require the state to file a new petition if the state seeks to extend the commitment.  (See Pen. Code, § 2960 et seq.; § 6331.)[7]  Accordingly, the three different statutory schemes make minor distinctions concerning the state's access to the committed person's SDSH medical records.  As to MDOs, the relevant statute provides that:  "If requested by the district attorney, the written evaluation shall be accompanied by supporting affidavits."  (Pen. Code, § 2970, subd. (a).)  As to MDSOs, former section 6316.2, subdivision (b), provided that the hospital "director may submit such supporting evaluations and case file to the prosecuting attorney who may file a petition for extended commitment in the superior

---

[7] MDSO laws were repealed January 1, 1982 (Stats. 1981, ch. 928, § 2), but persons committed before that date may remain as an MDSO, subject to continuing jurisdiction under the now-repealed statutes.  (*Baker v. Superior Court* (1984) 35 Cal.3d 663, 667.)

court which issued the original commitment." And, as we have already discussed, when it comes to updated SVP evaluations, the amended SVPA statute provides that both parties may issue subpoenas, and obtain "all records reviewed by the evaluator" and that both parties' "attorneys may use the records in proceedings under this article and shall not disclose them for any other purpose." (§ 6603 (j).)

In sum, we find that the relatively minor distinctions in the level of access given to the SDSH medical records of persons committed as either an MDO, an MDSO, or an SVP appear to be rationally related to each statutory scheme. Because an SVPA commitment is indefinite and is not subject to annual review, it is rational to allow for continuing annual evaluations. Further, it is rational to allow both parties to have access to the underlying SDSH medical records, primarily for evidentiary purposes. (See *Reilly v. Superior Court* (2013) 57 Cal.4th 641, 648.) Thus, we find that section 6603 (j) does not violate Landau's constitutional right to equal protection under the law.

Finally, Landau argues that release of an SVP's otherwise confidential medical records for SVPA proceedings may risk the "destruction of patient trust," participation in therapy, and the "moral authority" of the SDSH. But these interrelated privacy issues ultimately concern the wisdom of the statutory scheme and are essentially questions of public policy, which we leave to the legislative branch. (See *People v. Allen*, *supra*, 44 Cal.4th at p. 866 [an SVP's privacy interests must be balanced against the state's interest in protecting the public].)

## III

## DISPOSITION

The petition for writ of mandate is denied.  The previously issued stay is hereby dissolved.


MOORE, J.


WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SID LANDAU,<br><br>   Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>   Respondent;<br><br>THE PEOPLE,<br><br>   Real Party in Interest. | G056050<br><br>(Super. Ct. No. M9094-1)<br><br>ORDER GRANTING REQUEST FOR PUBLICATION; AND MODIFYING OPINION; NO CHANGE IN JUDGMENT |

Pursuant to California Rules of Court, rule 8.1105(c), the request to publish the opinion filed herein on February 15, 2019, is GRANTED. The opinion is ordered published in the Official Reports. (Cal. Rules of Court, rule 8.1105(b).)

In addition, the opinion is hereby modified as follows:

1. On page 4, footnote 5, first sentence, delete the word "After" at the beginning of the sentence and replace it with the word "Before."

2. On page 10, footnote 6, delete the last sentence, and replace with the following sentence:

But we read nothing within the opinion that would forestall our consideration of Landau's equal protection argument.

These modifications do not change the judgment.


                                        MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.