Filed 10/23/24

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| WILLIAM JAY PRICE, | C100920 |
| Petitioner, | |
| v. | (Super. Ct. No. 21MH03146) |
| THE SUPERIOR COURT OF BUTTE COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate. Petition granted. Michael R. Deems, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Julie A. Hokans, Deputy Attorneys General, for Real Party in Interest.

1

In 2006, petitioner William Jay Price was admitted to the State Department of State Hospitals as a sexually violent predator. In 2022, the superior court found that Price was suitable for conditional release. Months later, and prior to placing Price in the community, the superior court reconsidered its order granting Price's petition for conditional release, held a new hearing, and found him unsuitable.

Price now contends that the superior court erred in denying him the assistance of experts in defending his suitability at the contested hearing. Price further argues that the superior court erred in subsequently finding him unsuitable for conditional release, contending that the ruling was not supported by sufficient evidence. Real party in interest maintains the court had the authority to properly reconsider its order, but concedes the court erred in denying Price the assistance of experts prior to finding him unsuitable for conditional release. We conclude the trial court erred in finding Price unsuitable for conditional release and for reasons expounded below, we issue a peremptory writ of mandate directing the trial court to vacate its order finding as such.

## LEGAL BACKGROUND

The Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.)[1] "allows for the involuntary [civil] commitment of certain convicted sex offenders, whose diagnosed mental disorders make them likely to reoffend if released at the end of their prison terms." (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 235.) A person can only be civilly committed if, after a trial, a judge or a unanimous jury finds beyond a reasonable doubt the person is a sexually violent predator (SVP). (§§ 6600, 6601, 6603, 6604; see also *Cooley*, at p. 243.) If the person is found to be an SVP, the court orders

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

2

them committed to the State Department of State Hospitals (DSH) "for an indefinite term . . . for appropriate treatment and confinement in a secure facility." (§ 6604.)

The SVPA was not designed to be punitive. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1144.) Instead, it was "designed ' "to provide 'treatment' to mentally disordered individuals who cannot control sexually violent criminal behavior" ' and to keep them confined until they no longer pose a threat to the public." (*People v. Putney* (2016) 1 Cal.App.5th 1058, 1065; see also § 6606, subd. (a) [SVP "shall be provided with . . . treatment for his or her diagnosed mental disorder"]; § 6066, subd. (c).) "Because the SVPA is designed to ensure a committed person does not remain confined any longer than he or she qualifies as a sexually violent predator, it provides means for that individual to obtain review of his or her mental condition to determine if civil confinement is still necessary. [Citation.] One of two ways such review may be had is by petition for *conditional release* . . . under section 6608." (*People v. Collins* (2003) 110 Cal.App.4th 340, 346, italics added.)

Conditional release proceedings can be initiated by either DSH or the committed person. DSH can initiate release proceedings if it "determines that the person's diagnosed mental disorder has so changed that the person is not likely to commit acts of predatory sexual violence while under supervision and treatment in the community." (§ 6607, subd. (a).) Alternatively, the committed person can petition the court for conditional release after one year of commitment. (See § 6608, subds. (a), (c), (f).)

Where, as here, DSH authorizes the petition for conditional release, the SVP is presumptively entitled to conditional release and the state bears the burden of showing, by a preponderance of the evidence, that " 'conditional release is not appropriate.' " (*People v. Peyton* (2022) 81 Cal.App.5th 784, 797, citing § 6608, subd. (k).) During the hearing, the committed person is entitled to the assistance of counsel and the appointment of experts, and the state is entitled to have the committed person evaluated by its own experts. (§ 6608, subds. (a), (g); see *People v. McCloud* (2021) 63 Cal.App.5th 1, 13-15.)

3

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 7, 2022, DSH and Liberty Healthcare CONREP (Liberty) opined that Price was suitable for conditional release pursuant to section 6608. That same day, the superior court found Price suitable for conditional release. The court ordered a placement hearing to be held in November. The Butte County Sheriff's Office was designated to assist Liberty in finding a housing placement for Price.

Securing a suitable residential placement for Price proved to be difficult. Multiple reports were submitted to the superior court at subsequent placement hearings held between November 2022 and July 2023. During that time, Liberty searched a total of 341 potential locations in Butte County but had not identified a suitable or agreeable placement. The record also shows that although the search for housing was ongoing, the housing committee[2] only met three times, with the last one in April 2023.

On July 4, 2023, Liberty submitted a housing status report describing its ongoing placement search for Price. The report also indicated that since Price was granted conditional release in October 2022, his behaviors had concerned Liberty, leading to doubts as to his readiness for conditional release, warranting further assessment. As such, Liberty requested six additional months for further review of Price's readiness for conditional release and to allow Price the "opportunity for further treatment to address these concerns in effort to aide him to be better equipe to navigate the stressors and challenges accompanying community outpatient treatment."

On July 6, 2023, the superior court held a scheduled continuation of the placement hearing. The district attorney requested the court grant a six-month continuance to allow

---

[2]    Effective January 1, 2023, changes to section 6608.5, subdivision (d), pursuant to Senate Bill No. 1034 (2021-2022 Reg. Sess.), specify that DSH shall convene a committee consisting of counsel for the SVP, the sheriff or the chief of police of the locality for placement, and the county counsel and the district attorney of the county of domicile to assist in finding appropriate housing.

4

for further review of Price by Liberty. The court noted it had read and considered the July 4 report submitted by Liberty. Based on the report, the court found Price was not to be released "for reasons stated in this report," found good cause to continue the placement hearing, and granted the request for a six-month continuance so that Liberty and DSH could "further review Mr. Price's readiness and to allow him the opportunity for further treatment to address the concerns that are stated in this report." The court set the matter for January 11, 2024, to "address the concerns of CONREP as expressed in their report dated July 4th, 2023, and dependent thereon for continued review of placement."

On July 13, 2023, Price filed in the superior court a request that, "[s]ince Liberty [had] put [his] mental health into question," the court order "two unbiased [DSH] full evaluations to establish [his] current condition for supervised outpatient community release under W&I 6608."

On July 14, 2023, Price filed in this court a petition for writ of habeas corpus alleging that the continued placement hearings infringed on his liberty interest and requesting his immediate conditional release as a transient. The matter was assigned case no. C099016.[3] After considering informal responses, a different panel of this court issued an order to show cause (Order). In the Order, this court found that Price established a prima facie case that the superior court's continuance of the placement hearing for six months to January 2024 was an excessive period of time following the determination in October of 2022 that conditional release was appropriate, impacting his "significant liberty interest." (See *People v. Superior Court* (*Karsai*) (2013) 213 Cal.App.4th 774; see also § 6608, subd. (i).) We also stated that, in the interim, the superior court retained the authority to render the matter moot by advancing the hearing date. We stated, "At

---

[3] On our own motion, we take judicial notice of our records in case No. C099016. (Evid. Code, § 452, subd. (d); *Epic Communications, Inc. v. Richwave Technology, Inc.* (2015) 237 Cal.App.4th 1342, 1347, fn. 3 [" 'a court may take judicial notice of the contents of its own records' "].)

5

such a hearing, the court must: (1) consider whether petitioner's conditional release with programming but without housing, if housing remains unavailable, is required by law at this time, and (2) allow petitioner the opportunity to address any evidentiary showing supporting his continued detention and to present any relevant evidence or argument addressing specific concerns raised about his release. Should the court nevertheless conclude petitioner's conditional release is not warranted at this time, it must make explicit factual findings supporting a showing of good cause for a continuance and must set the matter for further hearing within a reasonable time." We appointed habeas corpus counsel for Price.

On October 3, 2023, the People filed a motion arguing that conditional release without housing was not required, and pursuant to Code of Civil Procedure section 1008, subdivision (b), the People moved the superior court to reconsider its previous order for conditional release. Specifically, the People argued that "Price has become growingly belligerent toward the court. At times interrupting the court, preventing the court from proceeding, voluntarily absenting himself from the proceedings and . . . has refused, in stringent terms, to live in permanent housing anywhere" but the city of his choosing.

On October 4, 2023, Liberty filed in the superior court a letter of recommendation pursuant to section 6608, subdivision (f) opining that Price was no longer suitable for conditional release. Liberty attached a "Hospital Liaison Report: Follow-up Patient Visit" dated September 27, 2023, from DSH, which largely provided the factual support for three events that purportedly constituted new facts and circumstances ultimately relied upon by the court in its reconsideration. In its report, DSH concluded that Price was not suitable for conditional release and recommended a review in six months to "identify if [Price] has been able to gain the self-management skills to be successful under the rigorous terms of conditional release."

On November 14, 2023, the superior court held a hearing, partly in response to this court's Order and partly in response to the concerns about Price's suitability for

6

conditional release raised by the People and Liberty. The superior court noted that, on a previous date, it addressed this court's first concern posed in the Order and determined that conditional release with programming but without housing was not required by law.[4] In an attempt to address the second concern posed in the Order, the court heard testimony from Price regarding the concerns and allegations brought by Liberty in the September 27 report and by the People in its motion for reconsideration.

The court found that over the course of the various placement hearings, "Price became increasingly obstreperous, interrupting the [c]ourt and other attendees. At one point, he had to be muted because of his interruptions," and that his behaviors had caused serious concerns on his readiness for conditional release at this time. Relying on these observations and the DSH report of September 27, 2023, the court concluded that, "Given the changed facts and circumstances as stated by this [c]ourt and pursuant to Code of Civil Procedure section 1008, the [c]ourt hereby reconsiders its conditional release order and finds that Mr. Price cannot be safely and adequately managed and treated in the community, and is, therefore, deemed not suitable for conditional release at this time."

With respect to case No. C099016, this court issued an order stating that in light of the hearing in the superior court, this court was considering dismissing the petition as moot. However, we invited Price's counsel to request an expansion of the scope of his appointment to file a petition for a writ of mandate in this court challenging the superior court's decision to find Price unsuitable for conditional release. Not long after, we granted such a request by counsel on behalf of Price, and later dismissed the petition filed in case No. C099016 as moot.

On April 22, 2024, counsel filed the instant petition for writ of mandate on behalf of Price. We issued an order to show cause.

---

[4] This aspect of the ruling is not challenged in the instant petition.

7

## DISCUSSION

### *Reconsideration of the Order Granting Conditional Release*

We agree with the parties that the superior court's finding of unsuitability for conditional release, made upon reconsideration of a prior grant of suitability, was procedurally flawed and cannot stand. We further conclude that Price is entitled to a new hearing in which the court reconsiders his petition for conditional release. We review statutory interpretation and implementation de novo. (*Landau v. Superior Court* (2019) 32 Cal.App.5th 1072, 1080-1081.)

Price initially filed a petition for release with the concurrence of DSH. On October 7, 2022, the superior court determined that Price would not be a danger to others while under supervision and treatment in the community and ordered Price suitable for conditional release. Over a year later, on November 14, 2023, the superior court held a hearing in which it considered anew the issue of Price's suitability for conditional release, based on new circumstances. This time apparently without the concurrence of DSH. At the conclusion of the hearing, the superior court changed its decision regarding Price's suitability for conditional release. Price argues he was denied due process during this hearing because he was not granted access to experts who could have assisted him in the hearing. Real party in interest agrees Price was improperly denied the assistance of experts, as do we.

Once the superior court decided to hold a new hearing on Price's suitability for release, we conclude the procedural protections within section 6608, subdivision (g) applied and Price should have been afforded the right to the appointment of experts as he had requested. As the statute governing hearings on conditional release expressly provides that a petitioner is entitled to the assistance of counsel and the appointment of experts, the superior court's noncompliance with the statutory provisions denied Price due process and the resultant finding of unsuitability cannot stand. (See *People v. McCloud, supra*, 63 Cal.App.5th at p. 15 [due process requires the appointment of

8

experts when a hearing is warranted]; cf. *People v. McKee* (2010) 47 Cal.4th 1172, 1192 ["expert testimony is critical in an SVP commitment proceeding"], superseded on other grounds by statute.) As the parties acknowledge, Price is entitled to a new hearing on this basis.

We find *People v. McKee* instructive. In *McKee*, the California Supreme Court considered the constitutionality of Proposition 83, which amended the term of an SVP's civil confinement from a fixed two years (at the end of which the prosecution had to prove beyond a reasonable doubt that the defendant still met the definition of an SVP) to an indefinite commitment "from which the [defendant] can be released if he proves by a preponderance of the evidence that he no longer is an SVP." (*People v. McKee, supra*, 47 Cal.4th at p. 1184.) McKee, a committed SVP, argued the amendment violated federal due process because, among other things, it made no provision for the appointment of an independent expert to assist indigent SVPs petition for conditional release.

The court agreed that access to an independent medical expert is crucial for SVPs seeking release from involuntary civil confinement. "[E]xpert testimony is critical in an SVP commitment proceeding, in which the primary issue is not, as in a criminal trial, whether the individual committed certain acts, but rather involves a prediction about the individual's future behavior." (*People v. McKee, supra*, 47 Cal.4th at p. 1192.) The court reasoned, "If the state involuntarily commits someone on the basis of expert opinion about future dangerousness, places the burden on that person to disprove future dangerousness, and then makes it difficult for him to access his own expert because of his indigence to challenge his continuing commitment, that schema would indeed raise a serious due process concern." (*Ibid.*) The court further observed that "the denial of access to expert opinion when an indigent individual petitions on his or her own to be released" — as opposed to when the person in charge of their treatment "authorize[s]" the petition — could pose "a significant obstacle to ensuring that only those meeting SVP commitment criteria remain committed." (*Id*. at p. 1193.) Citing the rule that we should

9

"construe statutes when reasonable to avoid difficult constitutional issues," the court interpreted the SVP statute "to mandate appointment of an expert for an indigent SVP who petitions the court for release." (*Ibid*.) After *McKee*, the Legislature amended the statute, which now explicitly provides that an SVP petitioning for conditional release "shall have the right to the appointment of experts, if the committed person so requests." (§ 6608, subd. (g).)

We conclude that the due process concern articulated in *McKee* applies with equal force to SVPs who face reconsideration of the court's decision to grant conditional release. "Once a court has determined that a particular SVP would not be a danger to the health and safety of others in that it is not likely that he or she would engage in sexually violent criminal behavior due to his or her diagnosed mental disorder if under supervision and treatment in the community, that person unquestionably has a significant liberty interest in being released." (*People v. Superior Court* (*Karsai*)*, supra*, 213 Cal.App.4th at pp. 788-789.) Upon reconsideration of this ruling, such a petitioner is called upon to defend against accusations of future dangerousness that may deprive him or her of this liberty interest. Depriving a person of a conditional liberty interest may only be had with due process protections. (See *People v. DeGuzman* (1995) 33 Cal.App.4th 414, 420 [SVP outpatient status revocation]; *Morrissey v. Brewer* (1972) 408 U.S. 471, 482 [parole revocation]; *People v. Vickers* (1972) 8 Cal.3d 451, 458 [probation revocation].) We conclude the only way to avoid that due process concern in the reconsideration setting is to provide the protections afforded in section 6608, including the appointment of experts to assist a petitioner in defending against such accusations.

Because the reconsideration hearing here violated due process, the court's subsequent finding of unsuitability must be vacated, and Price must be returned to his conditional release status. Should the parties seek reconsideration upon remand, the new hearing must include the protections provided by section 6608. Because conditional release status grants Price a conditional liberty interest, return to this status logically

dictates that during reconsideration, the party seeking reconsideration has the burden to prove that Price is unsuitable for conditional release.

Thus, we disagree with real party in interest's conclusory claim that Price should have a new hearing on his petition where he bears the burden of proving that conditional release is appropriate. Real party in interest essentially argues that, because DSH no longer concurs with Price's request for conditional release, he is placed in the position of seeking conditional release without DSH's approval and therefore, under section 6608, subdivision (k), he bears the burden to prove he is suitable. But this overlooks the fact that here, the finding of suitability had already been made. As concluded above and as the parties concede, the due process violation occurred during the *reconsideration* of that ruling and it is the resultant finding of *unsuitability* that cannot stand. While we acknowledge that DSH withdrew its concurrence to Price's petition, it did so only *after* Price's conditional release had been granted, vesting him with a conditional liberty interest. DSH's withdrawal of its concurrence, *after* the court found him suitable for conditional release, does not operate to shift the burden to Price to prove the suitability status the court has already found. (Cf. *People v. Rodriguez* (1990) 51 Cal.3d 437, 442 [deprivation of a conditional liberty interest must require facts justifying such deprivation by proof by a preponderance of the evidence].) Rather, having been found suitable for conditional release, if real party in interest wishes the court to reconsider that finding, it must bear the burden of doing so. In light of this conclusion, we need not address the merits of Price's claim that the evidence was insufficient to prove he was likely to reoffend sexually if conditionally released.

11

## DISPOSITION

Let a peremptory writ of mandate issue, directing the superior court to vacate its November 14, 2023, order finding Price unsuitable for conditional release.  Should the parties seek reconsideration, any new hearing shall be pursuant to the procedures described in section 6608 and consistent with this opinion.

/s/
EARL, P. J.

We concur:

/s/
BOULWARE EURIE, J.

/s/
WISEMAN, J.*

———————————

\*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.